

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 25, 1947

Hon. E. G. Garvey
County Auditor
Bexar County
San Antonio, Texas

Opinion No. V-103

Re: Under the given facts
would the Commissioners'
Court of Bexar County
have the authority to
reallocate certain funds
under the Budget Law?

Dear Mr. Garvey:

      In your letter of February 28, 1947, you re-
quest the opinion of this department upon certain ques-
tions arising under House Bill 240, Chapter 65, page 93,
Acts of the 49th Legislature, 1945; Art. 1666, V.R.C.S.,
and especially the power of the Commissioners' Court to
transfer or reallocate existing budget surpluses during
the year. This is commonly referred to as House Bill
240 and is the budget law pertaining to counties with a
population in excess of 225,000, as shown by the last
preceding Federal Census. Your County falls within this
class. We do not deem it necessary to set out your op-
inion request in full, but we think it may be divided in-
to three questions, one of which is general and two spec-
ific. Your general question is for a construction of
what is meant by "a budget of like kind and fund" which
appears in said House Bill 240 as follows:

      "Said Court may upon proper applica-
tion transfer an existing budget surplus
during the year to a budget of like kind
and fund, but no such transfer shall in-
crease the total of the budget."

      The two concrete questions presented by you
we restate as follows:

      (1) May the Commissioners' Court transfer
or reallocate the existing balance of $17,589.00 remain-
ing in the County Farm Budget after its discontinuance
by the Commissioners' Court, and no longer needed for the
purpose originally allocated, to the budget for the coun-
ty jail;

(2)   May the Commissioners' Court transfer or reallocate $3,000.00 from the Advertising and Publications Budget to the Voting Machine Budget?

We do not think it desirable, either from the standpoint of Bexar County or other counties coming under the provisions of House Bill 240, or of this department, to attempt to formulate a rule or pattern for the Commissioners' Court to follow applicable to all of the situations which might arise in the construction that should be placed upon what is meant by "a budget of like kind and fund"; but in answering the two concrete questions which we have stated above, it will be necessary for us to endeavor to ascertain the legislative intent in the use of this term, and the meaning that should be ascribed to it.  In doing so, we do not attempt to extend the meaning beyond its application to the two concrete questions which we shall answer, but of necessity some general ideas of its meaning and application will follow.

The Legislature did not define "like kind," hence we are relegated in construing this term to its usual, ordinary and generally accepted meaning, unless the context in which we find it requires a different meaning, and we do not think it does.  This is in accord with a universally accepted rule of statutory construction, and needs no citation of authority to support it.  It is not necessary for us to determine whether or not the proposed transfers or allocations are to a "like fund," for your request shows that in any event the transfers are within "like fund."  We need, therefore, to consider only the question of whether or not the transfers or allocations are to a "budget of like kind."

We are primarily concerned with the meaning that should be ascribed to the word "like" as used in the phrase "budget of like kind."  Webster defines the word "like" as having the same, or nearly the same, appearance, qualities, or characteristics; resembling, similar to.  Applying this natural and ordinary meaning to the word, as we must, we think the language of the statute means a budget having the same or nearly the same qualities and characteristics; resembling or similar to the budget from which a transfer or allocation is made.  We think, however, the distinction intended is a broad one between the respective budgets as originally set up, and should not be construed so strictly

as to virtually nullify the power of the Commissioners'
Court in transferring or allocating funds from one bud-
get item to another budget item, as contemplated by the
Act.  That the Legislature intended that the Commission-
ers' Court have the power to transfer unexpended bal-
ances when no longer needed for the purpose originally
set up in the budget to another budget short of funds
is clearly evidenced by a reading of the entire Act, for
in it we find:

> "The amount set aside in any budget
> for any purchase, order or requisition, con-
> tract, special purpose, or salary and labor
> account, shall not be available for alloca-
> tion for any other purpose unless an unex-
> pended balance remains in the account after
> full discharge of the obligation or unless
> the requisition, contract or allocation has
> been cancelled in writing by the Commission-
> ers' Court or county officer for a valid
> reason.

> ". . .

> ". . . The report shall contain a com-
> plete statement of the balances on hand at
> the beginning and the close of the month,
> and the aggregate receipts to and aggregate
> disbursements from each fund, the transfers
> to and from each fund." (Emphasis supplied)

Thus it clearly appears that the Legislature,
in the passage of this Act, recognized the necessity of
transfers from one fund to another as set up in the bud-
get, but has put two express limitations on the power
thus conferred upon the Commissioners' Court, namely, that
the transfer be from a fund or budget to a fund or budget
of like kind, and that the transfer shall not increase
the over-all amount originally set up in the budget.

A budget, under the Act, is more than a mere
estimate of probable revenues and expenditures.  It is
this and more.  It is a method whereby expenditures are
controlled and limited during the fiscal period by desig-
nating the amounts of money legally at the disposal of
the commissioners, and the purposes for which they may be
expended.  The Legislature recognized that tax paying cit-
izens have a vital interest in the appropriation and ex-
penditure of public funds in that it is provided in the

Act that a public hearing be had on the adoption of the budget, and that any interested citizen has a right to be heard. After the adoption of such a budget, it cannot be changed, except within the limitation we restate below. Realizing, however, that the orderly administration of the fiscal affairs of the county might require occasional reconsideration of the needs of the various departments and institutions of the county, provision has been made by authorizing unused and unexpended balances in the various budgets to be transferred where the need is greater, but such transfers are limited from and to budgets of "like kind." We believe the budget of the County Farm is enough like that of the County Jail to come within the spirit, if not the letter, of the statute. The County Jail and the County Farm are both county institutions, both have superintendents, certain common items of maintenance such as fuel, lights, water, etc., as disclosed by an examination of the copy of the budget submitted by you, and we think within the meaning of the budget law are "budgets of a like kind." Allocations for maintenance and operation of similar county owned institutions are of like kind, in our opinion.

In the case of Commissioner of Internal Revenue v. Crichton, 122 F. (2d) 181, Judge Hutcheson, in construing the term "property of a like kind," appearing in the Internal Revenue Code, which provides that no gain or loss shall be recognized if property held for productive use in trade or business or for investment is exchanged solely for property of a like kind, said:

"The commissioner concedes, as he must, that under Louisiana law, mineral rights are interests not in personal but in real property, and that the rights exchanged were real rights. In the light therefore of the rule the regulation lays down, of the examples given in the illustrations it puts forth, and of the construction which, under its interpretation, the statute has been given throughout this long period, it will not do for him to now marshal or parade the supposed dissimilarities in grade or quality, the unlikenesses, in attributes, appearance and capacities, between undivided real interests in a respectively small town hotel, and mineral

properties. For the regulation and the interpretation under it, leave in no doubt that no gain or loss is realized by one, other than a dealer, from an exchange of real estate for other real estate, and that the distinction intended and made by the statute is the broad one between classes and characters of properties, for instance, between real and personal property. It was not intended to draw any distinction between parcels of real property however dissimilar they may be in location, in attributes and in capacities for profitable use."

Concededly this case is not altogether analogous to the instant situation considered here, but it does in our opinion lend weight to a broad construction of the term "like kind" as used in H. B. 240.

You are, therefore, respectfully advised that in our opinion the Commissioners' Court is authorized to transfer all or any part of the unexpended balance no longer needed for the County Farm to the budget of the County Jail. Of course the existence of this unused balance in the County Farm Budget, and the power of the Commissioners' Court to transfer it to the County Jail Budget, rests within the sound discretion of the Commissioners' Court based upon sound economic principles in the administration of the fiscal affairs of the county.

We come now to the second question, the authority of the Commissioners' Court to transfer a surplus in the Advertising and Publication Budget of $3,000.00 to the Voting Machine Budget, and if we apply, as we must, the same reasoning in passing upon this second question as the first, it is obvious that the budget for advertising and publication is not of like kind to that of voting machines. In deference to what we conceive to be the legislative intent in the enactment of this law to vest in the Commissioners' Court rather broad discretion in transferring unused surplus in one budget to another, we would be inclined to approve a transfer of the budget here involved if we could find some basis of similarity between the two budgets, but this we are unable to do. It therefore follows that we answer your second question in the negative.

It cannot be said that the term "budget of like kind and fund," as used in H. B. 240, is free from ambiguity; and we take the liberty to suggest that it might be desirable for this provision of the Act to be clarified as to meaning by the Legislature now in session.

### SUMMARY

The Commissioners' Court of Bexar County is authorized under House Bill 240, Chapter 65, page 93, Acts of the 49th Legislature; Article 1666, V.R.C.S., to transfer an unused surplus from the County Farm Budget to the County Jail Budget, as they are budgets of "like kind"; but is without authority to transfer an unexpended balance in the Advertising and Publication Budget to the Voting Machine Budget, as they are not budgets of a like kind as contemplated by the provisions of House Bill 240, applicable to Bexar County and other counties having a population in excess of 225,000 as shown by the last preceding United States Census.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *L. P. Lollar*

L. P. Lollar
Assistant

LPL:amm:wb

APPROVED MARCH 26, 1947

*Price Daniel*

ATTORNEY GENERAL OF TEXAS